1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8   JASPAL SINGH GILL,

9                        Petitioner,

10        v.

11  DONALD R. HOLBROOK,

12                        Respondent.

Case No. C20-318-RSL-MLP

REPORT AND RECOMMENDATION

13

14                    **I.    INTRODUCTION**

15        This is a federal habeas action filed under 28 U.S.C. § 2254. Jaspal Singh Gill

16  ("Petitioner") is currently incarcerated at the Washington State Penitentiary in Walla Walla,

17  Washington. Petitioner seeks to challenge a 2014 judgment and sentence of the King County

18  Superior Court for a conviction of murder in the first degree with a firearm enhancement.

19  Respondent filed an answer to Petitioner's habeas petition and submitted relevant portions of the

20  state court record. Having considered the parties' submissions, the governing law, and the

21  balance of the record, the Court recommends that Petitioner's habeas petition be DENIED, that

22  this action be DISMISSED with prejudice, and that a certificate of appealability be DENIED as

23  to all claims.

REPORT AND RECOMMENDATION - 1

## II.    BACKGROUND

### A.    Statement of Facts

Petitioner is in custody under a state court judgment and sentence entered by the King County Superior Court for a conviction of first-degree murder in 2014. (State Court Rec. I, Ex. 1 (Dkt. # 16-1) at 2-6.) The Washington State Court of Appeals ("Court of Appeals") summarized the facts relevant to Petitioner's underlying conviction as follows:

> In August 2012, Harjinder Grewal drove Gill to the home of Gill's ex-wife and children. Harjit Singh [court's footnote omitted] was outside the home because he had just given Gill's daughter a ride home in his taxi van. As Harjit began to leave the driveway, Grewal parked his Mustang behind the van, potentially blocking its exit. Gill got out and shot Harjit five times. Harjit died.

> The State charged Gill with one count of first-degree murder. The first trial ended in a mistrial due to a hung jury.

> At the second trial, there was a dispute over what occurred just before Gill shot Harjit. Gill claimed self-defense. Several other witnesses, including Gill's daughter and son, testified differently about the incident.

> The jury found Gill guilty of first-degree murder and also found that he had committed the crime with a firearm. The trial court entered its judgment and sentence on the jury's verdict.

(State Court Rec. I, Ex. 2 at 12-13.)

### B.    Procedural History

Petitioner appealed his conviction and sentence to the Court of Appeals. (State Court Rec. I, Exs. 3-5.) On August 14, 2017, the Court of Appeals issued an unpublished opinion affirming Petitioner's judgment and sentence. (*Id.*, Ex. 2 at 41.) Petitioner then sought review by the Washington Supreme Court and presented the following issues:

> 1.    Did the Court of Appeals err when it failed to apply the constitutional harmless error standard after concluding the trial court interpreter did not translate the testimony precisely or thoroughly?

REPORT AND RECOMMENDATION - 2

2.      Did the Court of Appeals err when it concluded that it was proper for the State to introduce prejudicial and irrelevant testimony regarding the details of the defendant's divorce when those details did not relate to any alleged motive for the shooting?

(*Id.*, Ex. 8 at 173.) On January 3, 2018, the Washington Supreme Court denied review without comment. (*Id.*, Ex. 9 at 204.) On January 19, 2018, the Court of Appeals issued the mandate terminating direct review. (*Id.*, Ex. 10 at 206.)

On April 23, 2018, Petitioner, proceeding *pro se*, filed a first personal restraint petition ("PRP") in the Court of Appeals. (State Court Rec. I, Ex. 11 at 208-259, Ex. 12 at 261-69.) The Court of Appeals framed Petitioner's alleged issues as: (1) misconduct of the prosecutor during closing arguments; (2) ineffective assistance of counsel from his trial counsel by failing to object to the prosecutor's misconduct and appellate counsel for failing to raise the issue in his direct appeal; (3) the trial court erred in admitting evidence related to a prior assault; and (4) his trial counsel was ineffective for failing to advise him of the State's final plea offer before his second trial. (*Id.*, Ex. 16 at 378.) On December 17, 2018, the Court of Appeals partially denied Petitioner's first PRP but transferred his case to the King County Superior Court to conduct a reference hearing regarding his trial counsel's alleged failure to advise him of a final plea offer. (*Id.*, Ex. 15 at 373-76, Ex. 16 at 378-83.) On August 27, 2019, after the reference hearing was completed, the Court of Appeals denied the first PRP in full. (*Id.*, Ex. 18 at 394-397.) On November 15, 2019, the Court of Appeals issued a certificate of finality after its dismissal of Petitioner's first PRP became final. (*Id.*, Ex. 19 at 399.)

On February 27, 2020, Petitioner, now represented by counsel, filed the instant habeas petition and a motion to stay pending a determination on Petitioner's second PRP. (Pet. (Dkt. # 1); Pet.'s Mot. (Dkt. # 3).) On February 28, 2020, Petitioner filed a second PRP arguing that his trial counsel's failure to advise him of a final plea offer before his second trial constituted

REPORT AND RECOMMENDATION - 3

1    ineffective assistance of trial counsel and asserting his second petition fell within an exemption

2    from the one-year time limit for newly discovered evidence. (State Court Rec. X (Dkt. # 25-1),

3    Ex. 43 at 4102-4233.) On March 24, 2020, this Court granted Petitioner's request to stay his

4    petition. (Dkt. # 7.) On November 3, 2020, the Court of Appeals dismissed Petitioner's second

5    PRP as untimely under RCW 10.73.090(1) and successive under RCW 10.73.140. (*Id.*, Ex. 46 at

6    4279-85.)

7            On January 5, 2021, Petitioner sought discretionary review by the Washington Supreme

8    Court. (State Court Rec. II (Dkt. # 17), Ex. 20 at 401-572.) Petitioner solely raised the issue

9    pertaining to whether his trial counsel's failure to advise him of a final plea offer before his

10   second trial constituted ineffective assistance of trial counsel. (*Id.* at 406.) On February 23, 2021,

11   the Commissioner of the Washington Supreme Court denied review, determining Petitioner

12   failed to demonstrate review was warranted under Washington Rule of Appellate Procedure

13   13.4(b) because the Court of Appeals correctly concluded his petition was untimely and

14   successive. (*Id.*, Ex. 21 at 574-76.)

15           On March 17, 2021, the parties filed a joint motion to lift the stay on his habeas petition,

16   and on March 19, 2021, this Court lifted the stay and directed Respondent to file an answer.

17   (Dkt. ## 10-11.) On June 1, 2021, the Court of Appeals issued a certificate of finality on the

18   second PRP. (State Court Rec. X, Ex. 47 at 4287.) On June 4, 2021, Respondent filed an answer

19   and the state court record. (Answer (Dkt. # 15); State Court Recs. I-IX (Dkt. ## 16-24).) On June

20   15, 2021, Respondent filed an additional supplement to the state court record. (State Court Rec.

21   X (Dkt. # 25).) On June 30, 2021, Petitioner filed his reply. (Pet.'s Reply (Dkt. # 27).) This

22   matter is now ripe for review.

23

### III.    GROUNDS FOR RELIEF

Petitioner identifies the following claims for relief in his habeas petition:

1.      Gill was denied his Sixth and Fourteenth Amendment rights to present a defense and to a fair trial by the Punjabi interpreter's failure to correctly translate the testimony of a critical defense witness. (Pet. at 5.)

2.      The interpreter's failure to correctly and completely translate the testimony of a critical defense witness constituted structural error. (*Id.* at 7.)

3.      Petitioner was denied his Sixth and Fourteenth Amendment right to effective assistance of counsel in light of counsel's failure to competently advise and represent him in the plea process. (*Id.* at 8.)

### IV.    DISCUSSION

Respondent concedes Petitioner exhausted his first and second grounds for relief, but argues he failed to properly exhaust his ineffective assistance of counsel claim under his third grounds for relief. (Answer at 5.) Consequently, Respondent argues Petitioner's unexhausted third ground for relief is procedurally barred and that Petitioner is otherwise not entitled to relief on any of his exhausted claims. (*Id.*) The Court will first examine whether Petitioner has properly exhausted his third ground for relief before turning to an examination of his first two grounds for relief on the merits.

#### A.    Exhaustion and Procedural Default

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1). The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citations and internal quotation marks omitted). In order to provide the state courts with the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each appropriate state court for review, including a state supreme court with powers of discretionary

1    review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365

2    (1995); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). The petitioner must present the claim

3    to the state's highest court, even where such review is discretionary. *O'Sullivan*, 526 U.S. at 845.

4        It is not enough that all the facts necessary to support a prisoner's federal claim were

5    before the state courts or that a somewhat similar state law claim was made. *Anderson v.*

6    *Harless*, 459 U.S. 4, 6 (1982). The habeas petitioner must have fairly presented to the state

7    courts the substance of his federal habeas corpus claims. *Id*. "If a petitioner fails to alert the state

8    court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted

9    regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830

10   (9th Cir. 1996). A habeas petitioner who fails to meet a state's procedural requirements for

11   presenting his federal claims deprives the state courts of the opportunity to address those claims

12   in the first instance. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

13       Here, the Court finds Petitioner failed to exhaust his third ground for relief by not fairly

14   presenting it in a timely PRP to the Washington Supreme Court. Although Petitioner raised his

15   ineffective assistance of trial counsel claim to the Court of Appeals in his first PRP on collateral

16   review, he never sought review of that claim by the Washington Supreme Court. (*See* State Court

17   Rec. I, Ex. 16 at 378, Ex. 19 at 399.) When Petitioner again raised the claim in his second PRP,

18   both the Court of Appeals and Washington Supreme Court denied the second PRP as untimely

19   and successive. (*See* State Court Rec. II, Ex. 21 at 574-76; State Court Rec. X, Ex. 46 at

20   4279-85.) Furthermore, Petitioner does not address, or otherwise rebut, that his third ground for

21   relief was not presented to the Washington Supreme Court in a timely PRP. (*See* Pet.'s Mem.

22   (Dkt. # 2) at 26-34; Pet.'s Reply at 8-9.) Thus, Petitioner's third ground for relief has not been

23   properly exhausted.

REPORT AND RECOMMENDATION - 6

1    When a petitioner fails to exhaust his state court remedies, and the court to which

2    petitioner would be required to present his claims in order to satisfy the exhaustion requirement

3    would now find the claims procedurally barred, there is a procedural default for purposes of

4    federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). In such

5    instances, federal habeas review of the claims is barred unless the prisoner can demonstrate

6    "cause for the default and actual prejudice as a result of the alleged violation of federal law, or

7    demonstrate failure to consider the claims will result in a fundamental miscarriage of justice." *Id*.

8    at 750.

9    It is clear that Petitioner would now be time barred from returning to the state courts to

10    present his unexhausted claim—as he attempted to do with his second PRP—and that any such

11    attempt would also be barred as successive. *See* RCW 10.73.090, 10.73.140. As such, the Court

12    concludes Petitioner procedurally defaulted his third ground for relief. Petitioner makes no effort

13    to show cause or prejudice for his default, nor does he make any showing that failure to consider

14    his defaulted claim will result in a fundamental miscarriage of justice. (*See* Pet.'s Mem. at 26-34;

15    Pet.'s Reply at 8-9.) Therefore, Petitioner fails to demonstrate that his unexhausted ineffective

16    assistance of counsel claim is eligible for federal habeas review.

17    Accordingly, the Court recommends that Petitioner's federal habeas petition be denied

18    with respect to his third ground for relief.

19    **B.    Section 2254 Merits Review**

20    Federal habeas corpus relief is available only to a person "in custody in violation of the

21    Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus

22    petition may be granted with respect to any claim adjudicated on the merits in state court only if

23    the state court's decision was contrary to, or involved an unreasonable application of, clearly

1    established federal law, as determined by the Supreme Court, or if the decision was based on an

2    unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

3        Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

4    court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

5    or if the state court decides a case differently than the Supreme Court has on a set of materially

6    indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the

7    "unreasonable application" clause, a federal habeas court may grant the writ only if the state

8    court identifies the correct governing legal principle from the Supreme Court's decisions, but

9    unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

10        The Supreme Court has made clear that a state court's decision may be overturned only if

11    the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

12    The Supreme Court has also explained that "[a] state court's determination that a claim lacks

13    merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

14    correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing

15    *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

16        Clearly established federal law means "the governing legal principle or principles set

17    forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S.

18    at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the

19    legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary

20    to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d

21    952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

22        In considering a habeas petition, this Court's review "is limited to the record that was

23    before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S.

1    170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a

2    state court, such determination shall be presumed correct, and the applicant has the burden of

3    rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C.

4    § 2254(e)(1).

5              *1.    Ground One: Right to Present a Defense and Right to Fair Trial*

6              First, Petitioner argues under his first ground for relief that his right to present a defense,

7    and right to a fair trial, were denied by the Punjabi interpreter's inaccurate translations of

8    Grewal's testimony. (Pet.'s Mem. at 22-25.) "Whether rooted directly in the Due Process Clause

9    of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the

10   Sixth Amendment, the Constitution guarantees defendants 'a meaningful opportunity to present a

11   complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v.*

12   *Trombetta*, 467 U.S. 479, 485 (1984) (citations omitted)).

13             The Court of Appeals, in analyzing Petitioner's interpreter claim as to his rights to

14   present a defense and to a fair trial in Petitioner's direct appeal, found:

15             Gill argues that a trial interpreter failed to accurately interpret testimony of a key
              witness and that such allegedly inaccurate interpreting violated his constitutional
16            rights. [court's footnote omitted] The record does not support this argument.

17                                             . . .

18            "[A] defendant's right to an interpreter means a right to a competent interpreter."
              [court's footnote: *State v. Teshome*, 122 Wn. App. 705, 711, 94 P.3d 1004 (2004).]
19            When a defendant challenges an interpreter's competency, "the standard for
              competence should relate to whether the rights of non-English speakers are
20            protected, rather than whether the interpreting is . . . egregiously poor." [court's
              footnote: *Id.* at 712.]

21
              RCW 2.43.080 requires that all language interpreters serving in a legal proceeding
22            abide by a code of ethics. An interpreter takes an oath that he or she "will repeat
              the statements of the person being examined to the court . . . to the best of the
23            interpreter's skill and judgment." [court's footnote: RCW 2.43.050 (1989).]

REPORT AND RECOMMENDATION - 9

[Washington State General Rule "GR"] 11.2 also applies and provides that an interpreter:

> shall interpret or translate the material thoroughly and precisely, *adding or omitting nothing*, and stating as nearly as possible what has been stated in the language of the speaker .... [court's footnote: GR 11.2(b) (emphasis added).]

The rule also provides, in relevant part:

> When a language interpreter has any reservation about [his or her] ability to satisfy an assignment competently, the interpreter shall immediately convey that reservation to the parties and to the court. [court's footnote: GR 11.2(c)]

Here, Gill argues that the interpreter violated GR 11.2 and chapter 2.43 RCW. But he fails to show that this materially affected his rights.

Grewal testified for four days, but Gill's argument focuses on the second and third days of Grewal's testimony. An interpreter interpreted for Grewal on the first day when he explained the details surrounding the shooting. Gill did not object at trial to any of these interpretations.

On the second day, Grewal testified through a different interpreter. The record shows some confusion between Grewal and the interpreter near the beginning of the testimony. The State asked Grewal about a different name that he had used. The following exchanges occurred:

> [State]: At one point, you told us that you went by the name Henry.

> [Grewal through interpreter]: Yes.

> [State]: But you said that you've stopped using that name.

> [Grewal through interpreter]: It's not a big deal. By 9:00.

> [Grewal]: What?

> (Discussion in Punjabi.)

> [Grewal through interpreter]: Harjinder.

> (Further discussion in Punjabi.)

> [Grewal through interpreter]: It's just not a big thing in name. My name is Harjinder, but some people call me Henry. So it's nothing

much in the name. [court's footnote: Report of Proceedings (October 8, 2014) at 1137.]

Later, the State asked Grewal whether Gill or his brother-in-law, Swarn Gill, owned a limousine company. [court's footnote: *Id.* at 1139.] Grewal corrected the interpreter's interpretation of his answer. The following exchange occurred:

> [Grewal through interpreter]: Jaspal Gill used to take care of the company.
>
> [State]: He used to take care of the company? Or was it his company?
>
> [Grewal through interpreter]: What I knew was that Swam Gill was—used to take care of the company.
>
> [Grewal]: No. He's the owner.
>
> [Grewal through interpreter]: He's the owner and take care of the company. [court's footnote: *Id.*]

Grewal then stopped to explain a possible misunderstanding with the interpreter. [court's footnote: *Id.* at 1140.] The following exchange occurred:

> [Grewal]: By the way, I have a question. It looks like I'm translating literally wrong way. Every time I'm having kind of issue. I say something else, every time something else. You know? I don't want to speak very good English, but I try to understand most of it. It looks like it's interpreting a little bit different way. I'm sorry. I'm misunderstanding you or you're understanding me.
>
> [Interpreter]: I'm a trained interpreter, and the language is my native language. . . But if you speak slowly, and don't say it again, you know, just once . . . .
>
> [Grewal]: Okay.
>
> [State]: Mr. Grewal, let me ask you to do this for now. Please break up what you're saying into small bits so that Madam Interpreter can properly interpret, just like how I'm breaking up my questions. [court's footnote: *Id.*]

Thereafter, the interpreter expressed difficulty understanding Grewal. During Grewal's answer to a question, the interpreter and Grewal had a discussion in Punjabi. The interpreter stated to the court: "It doesn't make sense." [court's

footnote: *Id.* at 1180.] Grewal then repeated his answer and testified the rest of the day without incident.

On the third day, Grewal corrected the interpreter's interpretation again. In response to the State's question regarding a photograph of items on Grewal's coffee table, the following exchange occurred:

> [Grewal through interpreter]: There's a remote, there is a telephone, and there is—
>
> [Grewal]: A remote. I did not say telephone; I said remote.
>
> [Grewal through interpreter]: So there are two remotes . . . . [court's footnote: Report of Proceedings (October 9, 2014) at 1294.]

Later, outside the jury's presence and after Grewal's lengthy testimony about the shooting, Gill raised a concern about the accuracy of the interpretation. He claimed, for example, that the interpreter did not interpret Grewal's "yes" response to a question and only interpreted his explanation following the "yes" response. Gill requested that the trial court replace the then interpreter with the interpreter from the first day.

The State objected but told the court that several people in the audience informed the State of some inaccurate interpretations. The interpreter took the stand for examination.

The interpreter explained her professional experience and that she accurately and truthfully interpreted questions from English to Punjabi. But she explained that Grewal "babbles . . . extra words" and "add[ed] extra incoherent words" to a sentence. She further explained that she paraphrased his testimony rather than interpret each word, giving "the important thing, . . . the gist . . . ."

The State suggested that the trial court instruct Grewal to wait until a complete interpretation is given before answering a question. The State also suggested that Grewal provide "short segments [of testimony] at a time." Gill agreed with these recommendations and suggested that Grewal testify slowly. Gill did not request that Grewal restate his earlier testimony.

Before Grewal resumed his testimony, the trial court instructed the interpreter to interpret "each and every word." It also instructed the interpreter to do so "whether or not it ma[de] sense . . . to [her], or whether [she] believe[d] [it] [wa]s an incomplete answer or sentence . . . ." For the remainder of the third day and throughout the fourth day, Grewal testified, in detail, about the shooting without incident.

REPORT AND RECOMMENDATION - 12

There is no dispute that the interpreter violated GR 11.2(b) by failing to "interpret or translate the material thoroughly and precisely, *adding or omitting nothing. . . .*" [court's footnote: (Emphasis added.)] Thus, she failed to abide by the oath that she would "repeat the statements of the person being examined." [court's footnote: Former RCW 2.43.050.]

It is also arguable that the interpreter violated GR 11.2(c) because she failed to immediately convey to the parties and the court her "reservation about [her] ability" to competently interpret Grewal's testimony. The interpreter did not state any problems with Grewal's answers until her examination on the third day of Grewal's testimony.

Nevertheless, we conclude that the interpreter's conduct did not deprive Gill of his rights.

Gill relied on Grewal's testimony to support his theory of the case. But the specific interpretation discrepancies, described above, were not material to Grewal's testimony about the shooting. Specifically, Grewal's testimony about his nickname, the owner of a limousine company, and items on his coffee table were immaterial to Gill's self-defense claim.

Additionally, Grewal testified about the shooting, in detail, after the trial court instructed the interpreter to interpret every word of the testimony. That testimony was consistent with and further developed the unchallenged testimony from the first day. Gill has not challenged the correctness of this interpretation.

Gill relies on Grewal's "two remotes" testimony to argue that the interpreter "interjected her personal views of the evidence." This is not so.

GR 11.2(b) states that an interpreter "shall use the level of communication that best conveys the meaning of the source, and shall not interject [his or her] personal *moods or attitudes*." [court's footnote: (Emphasis added.)] As discussed above, Grewal corrected the interpreter's interpretation of his testimony regarding a photograph of items on his coffee table. During the interpreter's examination, she explained that she incorrectly said "phone" instead of "two remotes." She thought the photograph of the items contained a remote and a phone, rather than two remotes.

Gill's argument is unpersuasive for two reasons. First, Gill's argument inaccurately cites the rule. The rule refers to the interpreter's moods and attitudes when "convey[ing] the meaning of the source" of communication. [court's footnote: GR 11.2(b).] It does not mention an interpreter's personal view of the evidence. Second, Gill fails to show how the interpreter's incorrect interpretation about items in a photograph interjected her "personal *moods or attitudes*." [court's footnote: *Id.* (emphasis added).]

1
2

> Gill fails in his burden to establish that any interpreter shortcomings materially affected his rights. Accordingly, we need not examine his arguments regarding structural or harmless error.

3    (State Court Rec. I, Ex. 2 at 6-14.)

4    Petitioner argues that the interpreter's interpretation of Grewal's testimony was

5    constitutionally deficient because the State relied on portions of Grewal's incorrectly or

6    incompletely interpreted testimony to argue that jurors should not believe Grewal's version of

7    events. (Pet.'s Mem at 22-25.) Petitioner argues the interpreter's failure to translate accurately or

8    completely deprived him of the right to have Grewal's account of the shooting correctly

9    communicated to the jury. (*Id.* at 23.) Respondent counters that Petitioner's argument on this

10   ground does not rest upon a "clearly established" holding of the Supreme Court, and therefore,

11   he is not eligible for federal habeas relief. (Answer at 10-13.)

12   Here, Petitioner fails to cite to any "clearly established" Supreme Court precedent

13   applicable to his interpreter claim. (*See* Pet.'s Mem. at 22-25.) On this claim, Petitioner cites the

14   Supreme Court's decisions in *Chambers v. Mississippi*, 410 U.S. 284 (1973), and *Crane v.*

15   *Kentucky*, 476 U.S. 683 (1986), for the general principle that a defendant has the right to present

16   a defense as a fundamental element of due process and a fair trial. (*See* Pet.'s Mem. at 22.)

17   However, Petitioner's cited Supreme Court precedent does not involve an allegedly incorrect

18   translation by an interpreter nor do Petitioner's cited cases clearly establish that such error is

19   constitutional in nature. *See Lopez v. Smith*, 574 U.S. 1, 6 (2014) ("We have before cautioned the

20   lower courts . . . against 'framing our precedents at such a high level of generality.'") (quoting

21   *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam)).

22   Instead, it appears that Petitioner primarily levels his arguments on this claim based on

23   Washington state statutes, Washington state caselaw, and Ninth Circuit caselaw. (*See* Pet.'s Mem

REPORT AND RECOMMENDATION - 14

1     at 22-23 (citing RCW 2.43.010; *State v. Gonzales-Morales*, 138 Wash.2d 374, 378-79 (1999)), at

2     25 (citing *Perez-Lastor v. Immigration & Naturalization Serv.*, 208 F.3d 773, 780-81 (9th Cir.

3     2000).) But the Supreme Court has previously emphasized that neither circuit court precedent

4     nor state-court decisions constitute clearly established Supreme Court precedent for the purposes

5     of § 2254(d)(1). *See Kernan v. Cuero*, 138 S. Ct. 4, 9 (2017); *Glebe v. Frost*, 574 U.S. 21, 24

6     (2014) (citing *Lopez*, 574 U.S at 2). Furthermore, the Court notes that, "[t]he United States

7     Supreme Court has yet to recognize the right to a court-appointed interpreter as a constitutional

8     one." *United States v. Johnson*, 248 F.3d 655, 663 (7th Cir. 2001); *see also Hernandez v.*

9     *Frauenheim*, 2020 WL 7232129, at *7 (C.D. Cal. Oct. 15, 2020) (citing *Nguyen v. Booker*, 496

10    F. App'x 502, 506 (6th Cir. 2012) (finding that the Supreme Court has "not spoken" to the issue

11    of whether a criminal defendant has "a constitutional right to an interpreter in state court

12    proceedings.")).

13            Because Petitioner fails to demonstrate clearly established Supreme Court precedent

14    concerning issues surrounding the adequacy of translations of witness testimony, the state court's

15    adjudication of his claim on this ground cannot be deemed contrary to, or an unreasonable

16    application of, clearly established Supreme Court precedent. *See Brewer*, 378 F.3d at 955. The

17    Court therefore recommends that Petitioner's first ground for relief be denied.[1]

18            \\

19            \\

20

21    ---

      [1] In his Reply, Petitioner additionally argues the state court's adjudication resulted in a decision based on
      an unreasonable determination of the facts in light of the evidence presented under 28 U.S.C.

22    § 2254(d)(2). (Pet.'s Reply at 6-7.) However, Petitioner failed to raise an issue concerning § 2254(d)(2)
      on this ground until the submission of his reply. (*See* Pet.'s Mem. at 22-25.) As such, the Court declines
      to consider this aspect of his claim. *See State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir.

23    1990) ("[Parties] cannot raise a new issue for the first time in their reply briefs."); *Cedano-Viera v.
      Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for
      the first time in a reply brief.") (citing *Thompson v. Commissioner*, 631 F.2d 642, 649 (9th Cir. 1980)).

1

    2.    *Ground Two: Structural Error*

2

Next, Petitioner argues under Ground Two that the interpreter not correctly translating his

3

testimony resulted in structural error that requires reversal of his conviction. (Pet.'s Mem. at

4

25-26.) A structural error is one "entitling the defendant to automatic reversal without any

5

inquiry into prejudice." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1980 (2017). The Supreme

6

Court has previously explained that "[i]t is only for certain structural errors undermining the

7

fairness of a criminal proceeding as a whole that even preserved error requires reversal without

8

regard to the mistake's effect on the proceedings." *United States v. Dominguez Benitez*, 542 U.S.

9

74, 81 (2004) (citing *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991)). Automatic reversal is

10

required only if the error was a "structural defect" that permeated "[t]he entire conduct of trial

11

from beginning to end" or "affect[ed] the framework within which the trial

12

proceeds." *Fulminante*, 499 U.S. at 309-10.

13

On this ground, Petitioner cites to the Supreme Court's decisions in *Fulminante* and

14

*Waller v. Georgia*, 467 U.S. 39 (1984) for general principles regarding structural error. (Pet.'s

15

Mem. at 26.) Yet, similar to Petitioner's arguments under his first ground for relief, Petitioner

16

fails to cite clearly established Supreme Court precedent demonstrating that incorrect or

17

incomplete translation by an interpreter results in structural error. (*See id.*) In the absence of

18

Supreme Court precedent on this ground, the state court adjudication cannot be contrary to or an

19

unreasonable application of clearly established federal law. *See Brewer*, 378 F.3d at 955. The

20

Court recommends that Petitioner's second ground for relief also be denied.

21

**C.    Evidentiary Hearing**

22

Finally, Petitioner appears to request an evidentiary hearing. (*See* Pet.'s Mem. at 34.) The

23

decision to grant an evidentiary hearing lies within the discretion of the Court. *Schriro v.*

*Landrigan*, 550 U.S. 465, 473 (2007). The Court "must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id*. at 474 (citation omitted). Nevertheless, this Court's review under 28 U.S.C. § 2254(d)(1) is limited to the record before the state court. *Pinholster*, 563 U.S. at 181-82. Therefore, a hearing is not required if the factual allegations would not entitle Petitioner to relief under § 2254(d). *See Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*.

The Court finds an evidentiary hearing is not necessary in this case because Petitioner's claims may be resolved on the existing state court record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record."). Because Petitioner has not alleged facts that would otherwise entitle him to habeas relief, the Court recommends that his request for an evidentiary hearing also be denied.

## V.   CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537

U.S. 322, 327 (2003). Under this standard, the Court concludes a certificate of appealability should be denied as to all of Petitioner's claims.

## VI.    CONCLUSION

For the foregoing reasons, this Court recommends Petitioner's habeas petition (dkt. # 1) be DISMISSED with prejudice and that a certificate of appealability be denied as to all claims. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **twenty-one (21)** days after the filing of this Report and Recommendation. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 17, 2021.**

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Robert S. Lasnik.

Dated this 23rd day of August, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge